**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DAVID LYNN COX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. CIV-20-434-RAW-KEW |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff David Lynn Cox (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 45 years old at the time of the ALJ's decision. He has a high school education and past relevant work as a lumber salesman, painter, carpenter, and heavy truck driver. Claimant alleges an inability to work beginning on June 7, 2018, due to limitations resulting from peripheral neuropathy, degenerative disc disease, high blood pressure, short term memory, diabetes, thyroid problems, carpal tunnel syndrome in both hands, and depression.

## Procedural History

On September 25, 2018, Claimant filed an application for a period of disability and disability insurance benefits under Title

II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On October 1, 2018, he filed an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. His applications were denied initially and upon reconsideration. On January 17, 2020, ALJ Jana Kinkade conducted a hearing in Dallas, Texas, at which Claimant was present and testified. On March 13, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on September 29, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) improperly finding he retained the capacity to perform manipulative tasks on a frequent basis without providing specific reasons for discounting medical opinions from Claimant's treating physician and the consultative examiner limiting Claimant to such tasks on an occasional basis and (2) selectively disregarding medical

4

opinion evidence of the vocational impact of Claimant's mental limitations.

## Medical Opinion Evidence

In her decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease of the lumbar spine, diabetes mellitus, peripheral neuropathy, carpal tunnel syndrome, and dysthymia with anxious distress. (Tr. 12). She determined Claimant could lift and carry ten pounds occasionally and less than ten pounds frequently. He could stand and walk for two hours in an eight-hour workday and could sit for six hours in an eight-hour workday. Claimant could occasionally push and pull and climb ramps and stairs, but he could never climb ladders, ropes, or scaffolds. He could occasionally balance, stoop, kneel, crouch, and crawl and frequently handle and finger. Claimant could never be exposed to temperature extremes or other unprotected heights. He could understand, remember, and carry out detailed, but not complex instructions, and tasks in an environment that involves few, if any, workplace changes. Claimant could occasionally interact with supervisors, co-workers, and the public. (Tr. 14).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of document scanner, assembler, and office helper, all of which the ALJ found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant had not been under a

disability from June 7, 2018, through the date of the decision. (Tr. 19).

Claimant contends the ALJ failed to properly consider certain medical opinion evidence. The medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, she must "articulate" in her decision "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [she] will articulate how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). She may not "pick and choose among medical reports, using portions of evidence favorable to [her] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). If she rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted). An ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Claimant first contends that the ALJ did not provide specific and legitimate reasons for rejecting medical opinions from his

7

treating physician Victoria Pardue, D.O., and consultative examiner Terry Kilgore, M.D, limiting Claimant to performing manipulative tasks on an occasional basis, instead finding that Claimant could frequently handle and finger in the RFC. Claimant was assessed with peripheral neuropathy in September of 2013 (Tr. 15, 354-56), and EMG testing in March of 2015 showed moderate carpal tunnel syndrome on the right side, mild carpal tunnel syndrome on the left side, very early slowing in the ulnar at the cubital fossa on the left, and no cervical radiculopathy noted. (Tr. 15, 477).

In both August and December of 2017, Dr. Pardue assessed Claimant as "[p]ositive for paresthesia (bilateral upper extremity; bilateral lower extremity) and weakness." Claimant had pain with range of motion in bilateral wrist flexion and extension and burning in the bilateral hands. (Tr. 379-82, 383-86). In February and July of 2018, Claimant remained "[p]ositive for paresthesia (bilateral upper extremity; bilateral lower extremity) and weakness." (Tr. 16, 375-78, 371-74). Dr. Pardue completed a medical source statement in September of 2018. In addition to other limitations, she concluded Claimant had manipulative limitations and limited him to only occasional reaching in all directions (including overhead), handling (gross manipulation), fingering (fine manipulation) and feeling (skin receptors) for both the right and left hand. (Tr. 17, 256-58).

In November of 2018, Claimant underwent a physical consultative examination with Dr. Kilgore. Among other complaints, Claimant reported burning and stinging in both hands. Upon examination, his hand strength was 4/5 restricted by pain, and he had "slight" numbness and tingling in both hands. Dr. Kilgore noted some slight decrease in range of motion of Claimant's wrists, thumbs, fingers, elbows, and shoulders. He noted there was sensory loss in the first three fingers. Although he noted Claimant could effectively oppose thumb to fingertip and manipulate small objects, he determined Claimant could effectively grasp tools such as a hammer only occasionally. (Tr. 16, 405-11).

Claimant returned to Dr. Pardue in January of 2019. He presented with type II diabetes with peripheral neuropathy manifested as numbness and tingling. It was noted that his compliance with treatment had been poor, as he did not follow up as directed. He complained of mild pain in his upper right arm, lower back, left foot, and right leg and characterized it as aching. Upon examination, he exhibited pain with range of motion in right elbow flexion and extension. (Tr. 16, 430-33).

The ALJ summarized Dr. Pardue's findings in the decision, including her findings that Claimant could only occasionally handle, finger, feel, and reach in all directions bilaterally. The ALJ found Dr. Pardue's opinion unpersuasive, reasoning that "[a]lthough supported by treatment records from a treating

9

relationship, it is inconsistent with the evidence as a whole, which does not contain findings to support this degree of restriction." (Tr. 17). The ALJ also discussed Dr. Kilgore's examination of Claimant, including his opinion that Claimant could occasionally grasp objects such as a hammer. (Tr. 16). She found the opinion persuasive, noting it was "supported by treatment records, and is generally consistent with evidence of some restriction caused by the [C]laimant's carpal tunnel syndrome." (Tr. 16).

Although the ALJ does not have to give any "specific evidentiary weight" to the opinions of Dr. Pardue and Dr. Kilgore and can utilize a "single analysis" approach when considering their opinions, the ALJ still had to explain or identify the claimed inconsistencies in the medical evidence, and she must provide a proper explanation to support her findings. *See Hardman*, 362 F.3d at 681. The ALJ discussed the manipulative limitations imposed by Dr. Pardue in the summary of the evidence, but she failed to explain or identify the inconsistencies between Dr. Pardue's manipulative limitations and the record evidence, merely stating her opinion was "inconsistent with the evidence as a whole[.]" (Tr. 17). Moreover, even though the ALJ found that Dr. Kilgore's opinion was persuasive, she failed to explain the discrepancy between his limiting Claimant to occasional grasping of objects such as a hammer and her inclusion in the RFC that Claimant could

10

frequently handle and finger. Because all of the jobs identified by the VE and relied upon by the ALJ at step five require Claimant engage in manipulative tasks on a frequent basis, the ALJ should properly address the manipulative limitations imposed by Dr. Pardue and Dr. Kilgore on remand and determine to what extent their opinions affect Claimant's ability to perform work.

Claimant also asserts that the ALJ failed to properly consider certain medical opinions regarding her mental limitations. He contends that the ALJ failed to give reasons for excluding limitations from consultative psychologist Theresa Horton, Ph.D., and the reviewing psychologist Stephen Scott, Ph.D.

Claimant was noted to be anxious and depressed on several occasions during his treatment at the Hugo Medical Clinic between January of 2017 and July of 2019. (Tr. 371-72, 375, 377, 379, 381, 383, 385, 387-88, 391, 393, 426, 430). He underwent a consultative psychological examination with Dr. Horton in November of 2018. He reported suffering from persistent depression for a few years and that he had been taking Celexa for around one year, which he continued to take. He believed the medication helped both his anxiety and depression. Claimant had not had counseling. He reported depressed mood most of the day, for more days than not, and for at least two years. Among other complaints, Claimant suffered from low energy, poor concentration, and difficulty making decisions. He reported his symptoms caused significant

11

distress or impairment in social and occupational functioning. He felt keyed up, tense, unusually restless, and had difficulty concentrating because of worry.

Upon examination, Dr. Horton noted Claimant's thought processes were logical, organized, and goal directed, thought content included some past thoughts of suicide but no current thoughts or plans to harm himself or others, mood was described as "predominantly depressed with anxiety," affect was "content congruent and expressive," Claimant appeared to function within the average to low average range of intelligence, his concentration appeared adequate, judgment was appropriate, and insight was fair. Dr. Horton determined Claimant was capable of managing benefits if awarded. She diagnosed Claimant with dysthymia with anxious distress. For her prognosis, she found Claimant "appeared capable of understanding, remembering and managing many simple and complex instructions and tasks, though [he] has done best historically doing those mostly routine or repetitive, and does not appear to adjust well in areas that are fast paced and/or densely populated." (Tr. 17, 413-17).

The ALJ found Dr. Horton's opinion persuasive, noting it was "supported by findings from a clinical interview, and is consistent with evidence of some limitations caused by depression symptoms found in the record." (Tr. 17). The ALJ accounted for Dr. Horton's opinion in the RFC by finding Claimant "could understand, remember,

and carry out detailed, but not complex instructions, and tasks in an environment that involve[d] few, if any, workplace changes[, and] . . . can occasionally interact with supervisors, coworkers, and the public." (Tr. 14). This Court finds no error with the ALJ's treatment of Dr. Horton's opinion in the RFC assessment.

In January of 2019, Dr. Scott reviewed the record and assessed the severity of Claimant's mental impairment by evaluating the four areas of mental functioning. While he determined Claimant had mild limitations in three of the areas, he determined Claimant had moderate limitations in his ability to concentrate, persist, or maintain pace. (Tr. 113). When determining the mental RFC, Dr. Scott indicated Claimant was moderately limited in his ability to carry out detailed instructions. His narrative RFC included that Claimant could understand, remember, and carry out simple and some more detailed instructions with routine supervision, relate to supervision and others on a superficial work basis, and adapt to a work environment. (Tr. 119-120).

The ALJ found that Dr. Scott's opinion was persuasive, noting it was "supported by treatment records, and [was] consistent with evidence of mental condition treatment limited to medication management." (Tr. 18). Claimant argues that the ALJ failed to account for Dr. Scott's finding that he was moderately limited in his ability to sustain concentration and persistence and in his ability to carry out detailed instructions in the RFC assessment.

13

Dr. Scott, however, reached these conclusions in Section I of the MRFCA and then further addressed the limitations in the narrative portion of the MRFCA. He determined Claimant could understand, remember, and carry out simple and some more detailed instructions with routine supervision, could relate to supervision and others on a superficial work basis, and could adapt to a work environment. (Tr. 119-20). Because Dr. Scott adequately explained the moderate limitations found in Section I in the narrative portion of the assessment, the ALJ was not required to include or discuss the limitations found in Section I of the MRFCA. *See Lee v. Colvin*, 631 Fed. Appx. 538, 541 (10th Cir. 2015) ("Having adopted the limitations described in section III of the MRFCA, the ALJ was not also required to specifically adopt or discuss each individual limitation described in section I. . . . [T]he ALJ's RFC assessment reflected the moderate limitations identified by Dr. Lindsay in Section I of the MRFCA, as explained in the narrative portion of his assessment, Section III."). The Court finds the ALJ properly considered Dr. Scott's opinion when assessing the RFC.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED

for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 1st day of February, 2022.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE